UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ALEXANDER PAGE,

                      Plaintiff,

    v.

FIFE POLICE DEPARTMENT, *et al.*,

                      Defendants.

No. C08-5381 FDB/KLS

**REPORT AND RECOMMENDATION**
**Noted for: December 18, 2009**

Before the Court is the motion for summary judgment of Defendants the Fife Police Department and Officers Jake Stringfellow and Toby Volkman, with accompanying affidavits. Dkts. 30-33. Plaintiff filed a response. Dkt. 34. Defendants filed a reply and supplemental affidavits. Dkts. 35-37. Having carefully reviewed the parties' papers, summary judgment evidence, and balance of the record, and viewing the evidence in the light most favorable to Mr. Page, the undersigned recommends that Defendants' motion for summary judgment be granted.

**BACKGROUND AND STATEMENT OF FACTS**

The following background summary and recitation of facts is based on the verified complaint, and the declarations and exhibits filed in support of Defendants' motion, which are not disputed by Plaintiff.

REPORT AND RECOMMENDATION - 1

Plaintiff is a level 3 sex offender. On May 27, 2008, Officers Stringfellow and Volkman of the Fife Police Department were conducting routine checks on registered sex offenders living in the City of Fife as required by state law and City policy in order to verify the registered addresses of the sex offenders. RCW 9A.44.135; Dkt. 33, 5, 6, 9; and Dkt. 32, pp. 6-7. Following their standard procedure, the officers performed a search of the Washington Crime Information Center (WACIC) and National Crime Information Center (NCIC) databases on the persons they were going to check that day prior to leaving the police station. Dkt. 32, ¶ 8; Dkt. 33, ¶ 8. The purpose of this search was to determine whether any of the sex offenders had any outstanding warrants for their arrest, and whether they were on active probation and monitoring by the Washington State Department of Corrections (DOC). *Id*.

It was the police officers' practice to contact DOC when they intended to perform routine checks on sex offenders who are on active probation to ask if a DOC officer would like to accompany them on the check. *Id*. Generally, if a DOC officer is available, he or she will accompany the police officers during their routine checks in order to perform a simultaneous probation check on the offender. *Id*.

Officers Volkman and Stringfellow searched Plaintiff's legal status on May 27, 2008 and learned Plaintiff had two warrants for his arrest. Dkt. 33, pp. 9-10; Dkt. 32, p. 6. They also learned he was under active DOC supervision. *Id*. The officers called the jurisdictions that issued the warrants and confirmed the arrest warrants were valid. *Id*. They then contacted DOC to notify the department that they intended to perform a check on Plaintiff to verify his address and requested that they send a DOC officer as well. Dkt. 32, p. 6.

Officers Volkman and Stringfellow left the police department and drove to Plaintiff's hotel room to verify his address at the Hometel Inn. They were joined by Detective Rackley from

REPORT AND RECOMMENDATION - 2

the Fife Police Department. Dkt. 33, p. 9. Plaintiff was not at home when they arrived, so they left a business card. *Id*. Plaintiff called Officer Stringfellow later that day and left a message indicating he was home. *Id*. The officers returned to Plaintiff's registered address. *Id*. On their way to Plaintiff's residence, they were contacted by DOC Officer Joanne Springer who said she was on her way to the hotel as well. *Id*.

When the officers arrived, they spoke with Plaintiff and confirmed he was residing at the address listed in his sex offender registration. Dkt. 32, p. 6, Dkt. 33, p. 9. They informed him of the two arrest warrants, and Plaintiff admitted he was aware the warrants had been issued. *Id*. He stated he was "going to get those squashed."[1] *Id*. DOC Officer Springer arrived and had a conversation with Plaintiff. The officers do not know what they discussed as they were not part of the conversation. Dkt. 33, 9. Officers Volkman and Stringfellow did not conduct a search of Plaintiff's hotel room. Dkt. 32, ¶ 9; Dkt. 33, ¶ 9.

Officers Volkman and Stringfellow took Plaintiff into custody pursuant to the two arrest warrants and placed him in handcuffs. Dkt. 32, p. 3; Dkt. 33, pp. 4-9. The officers had planned to place Plaintiff in the back of a patrol car to take him to jail, but quickly determined he would not fit due to his large size.[2] *Id*. Therefore, Officer Stringfellow and Detective Rackley returned to the police department to get a jail transport van. Dkt. 33, p. 9. Once they returned, they were able to easily fit Plaintiff in the van. *Id*. Officer Stringfellow and Detective Rackley then returned to their duties while Officer Volkman drove Plaintiff to the Regional Justice Center (RJC) for booking and detention. *Id*.

---

[1] Plaintiff admitted in his original complaint that "while incarcerated for 112 days," he failed to appear for two court dates and two separate warrants were issued for his arrest. Dkt. 11, p. 6 (CM/ECF pagination).

[2] The Arrest Detail Report indicates that Mr. Page is 6'01" tall and weighed 280 pounds at the time of his arrest. Dkt. 33, p. 7.

REPORT AND RECOMMENDATION - 3

Upon arrival at the RJC, Plaintiff had difficulty getting out of the transport van due to his size. Dkt. 32, pp. 4, 6-7. He is approximately 6 feet and 2 inches tall, and 320 pounds. Dkt. 31, p. 12; Dkt. 32, p. 7. As Officer Volkman attempted to assist Plaintiff out of the van, Plaintiff's body pinched Officer Volkman's arm in the doorway and Officer Volkman pulled his arm back. Dkt. 32, pp. 4, 7. Plaintiff then sat back in the van.

In a detailed, hand-written, sworn statement signed in July 2008, Plaintiff stated, "Officer Volkman pulled too hard and too fast. He lost his grip and I fell to the floor on to my shoulder injuring my neck, back and sholder[sic]." Dkt. 31, p. 5.

Plaintiff complained he was hurt and could not get out of the van, so a staff nurse from the RJC came out to the van to examine him. Dkt. 32, pp. 4-5. Plaintiff told the nurse at the RJC, "I fell and hurt my back and neck. I can't move my feet." Dkt. 32, p. 5. She was unable to find any injury, so she sent Plaintiff to Valley Medical Center to be examined by a doctor so he could be medically cleared and booked into the jail. *Id*. (Arrestee Medical Clearance Report signed by RN Marshal on May 27, 2008).

Officer Volkman asked the RJC staff to contact the Kent Fire Department to transport Plaintiff to the hospital. Dkt. 32, pp. 4, 7. Once the Fire Department personnel arrived at the RJC, Officer Volkman released custody of Plaintiff to them so he could be taken to the hospital for further evaluation and medical clearance. *Id*.

Plaintiff was transported by the Kent Fire Department to the hospital, and Officer Volkman returned to duty in the City of Fife. *Id*. Upon arrival at the hospital, however, Plaintiff decided not to be examined and left the hospital before he received any examination or treatment. Dkt. 31, p. 6.

REPORT AND RECOMMENDATION - 4

On June 16, 2008, Plaintiff pled guilty to charges of 4th degree domestic violence assault and driving while his license was suspended. Dkt. 11, p. 14 (CM/ECF pagination). These were the original charges which led to the warrants for his arrest. Plaintiff filed his lawsuit in federal court on June 12, 2008. Dkt. 1. He then filed a claim for damages on September 18, 2008, over 90 days after he initiated his lawsuit. Dkt. 31, p. 7.

Mr. Page relies on his Amended Complaint and his sworn statement dated July 6, 2008 in opposition to the Defendants' motion for summary judgment. Dkt. 34, p. 1. In his July 6, 2008 statement, Mr. Page states that Officer Volkman "started pulling me out of the patty wagon aggressively. I told I could stand up that my legs were numb. Officer Volkman pulled too hard and too fast. He lost his grip and I fell to the floor on to my sholder [sic] injuring my neck, back and sholder [sic]." Dkt. 31, p. 5.

## STANDARD OF REVIEW

Summary judgment shall be rendered if the pleadings, exhibits, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56(c). In deciding whether summary judgment should be granted, the court must view the record in the light most favorable to the nonmoving party and indulge all inferences favorable to that party. Fed. R. Civ. P. 56(c) and (e). When a summary judgment motion is supported as provided in Fed. R. Civ. P. 56, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in Fed. R. Civ. P. 56, must set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e). If the nonmoving party does not so respond, summary judgment, if appropriate, shall be rendered against that party. *Id*.

The moving party must demonstrate the absence of a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). Mere disagreement or the bald assertion that a genuine issue of material fact exists does not preclude summary judgment. *California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). A "material" fact is one which is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit," and the materiality of which is "determined by the substantive law governing the claim." *T.W. Electrical Serv., Inc. v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Mere "[d]isputes over irrelevant or unnecessary facts," therefore, "will not preclude a grant of summary judgment." *Id.* Rather, the nonmoving party "must produce at least some 'significant probative evidence tending to support the complaint.'" *Id.* (quoting *Anderson*, 477 U.S. at 290); see also *California Architectural Building Products, Inc.*, 818 F.2d at 1468 ("No longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment."). In other words, the purpose of summary judgment "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990).

"A plaintiff's belief that a defendant acted from an unlawful motive, without evidence supporting that belief, is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive." *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001).

Basic and fundamental to any 42 U.S.C. § 1983 action is an inquiry focusing on whether the plaintiff has been denied a right of constitutional significance. *Parratt v. Taylor*, 451 U.S. 527, 532, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981), overruled on other grounds;

REPORT AND RECOMMENDATION - 6

*Daniels v. Williams*, 474 U.S. 327, 106 S. Ct. 662, 88 L Ed. 2d 662 (1986). The Civil Rights Act is not a font of tort law. *Parratt*, 451 U.S. at 544. The particular harm complained of must be scrutinized in light of the specifically enumerated rights and privileges protected by the United States Constitution. *Baker v. McCollan*, 443 U.S. 137, 140, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979).

Liability under § 1983 is premised on a defendant's personal participation in the deprivation of a constitutional or other federal right. *E.g., Leer v. Murphy*, 844 F.2d 628, 632-33 (9th Cir. 1988). No defendant can be found vicariously liable under § 1983 pursuant to a theory of respondeat superior. *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658, 690-94, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Ivey v. Board of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). To go forward, therefore, the plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution. His claims fail if he is unable to do so.

**DISCUSSION**

Defendants move for dismissal of Plaintiff's claims against them because (1) they are entitled to absolute quasi-judicial immunity and Plaintiff cannot prove unlawful seizure under the Fourth, Fifth or Fourteenth Amendments when he was arrested pursuant to two valid arrest warrants; (2) Plaintiff cannot prove excessive force under the Eighth or Fourth Amendments; and (3) Plaintiff cannot pursue state claims because he did not first comply with the state claim filing statute.

In his response, Mr. Page claims that questions of fact exist on his Fourth Amendment claim of unlawful seizure and that the Officers were acting outside the scope of any claim of immunity but within the scope of their employment. Dkt. 34, pp. 3-4. Mr. Page states further that "all requests for relief made by the Defendant's [sic] that have gone unchallenged in this Response are conceded." Dkt. 34, p. 5.

**A.  Absolute Quasi-Judicial Immunity**

Government officials performing discretionary functions are entitled to qualified immunity from damages if their conduct does not violate a "clearly established statutory or constitutional rights of which a reasonable person would have known." *Thorsted v. Kelly*, 858 F.2d 571, 573 (9th Cir. 1988), quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A law enforcement officer who obtains a search warrant is entitled to qualified immunity unless the "warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable . . .". *Malley v. Briggs*, 475 U.S. 335, 344-45 (1986). In addition, the doctrine of qualified immunity does not require that probable cause to arrest exist. Even absent probable cause, qualified immunity is available if a reasonable police officer could have believed that his or her conduct was lawful, in light of clearly established law and the information the searching officers possessed. *Anderson v. Creighton,* 483 U.S. 635, 641 (1987). Thus, even if the officers were mistaken that probable cause to arrest Mr. Page existed, they are nonetheless immune from liability if their mistake was reasonable. *Anderson*, 483 U.S. at 641.

The critical inquiry is whether a reasonable police officer could have believed that his or her conduct was lawful, in light of clearly established law and the information he or she possessed at the time. *Id*. The purpose of qualified immunity is to "avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment."

REPORT AND RECOMMENDATION - 8

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Where the evidence is undisputed, a district court may establish that a defendant is entitled to qualified immunity as a matter of law. See *Thorsted v. Kelly*, 858 F.2d 571, 575 (9th Cir. 1988). However, "when there are triable issues of fact of a reasonable belief that a search is lawful, viewed in light of the settled nature of law, these issues are for the jury." *Id*. at 575. See also *Bilbry v. Brown*, 738 F.2d 1462, 1467 (9th Cir. 1984).

Here, the material facts are not in dispute. Officers Stringfellow and Volkman confirmed the two arrest warrants were valid before they arrested Plaintiff. Dkt. 33, pp. 9-10; Dkt. 32, p. 6. After the officers informed him of the two arrest warrants, Mr. Page admitted he was aware the warrants had been issued and stated that he was "going to get those squashed." *Id*.

It is undisputed that Officers Volkman and Stringfellow were acting under two valid arrest warrants. Thus, they are entitled to quasi-judicial immunity for Plaintiff's Fourth, Fifth and Fourteenth Amendment claims of unlawful arrest, kidnapping, violation of due process and violation of equal protection in connection with his arrest.[3] Mr. Page does not dispute that the officers "may have been acting within the scope of immunity at the initiation of the arrest," but argues that they were acting outside the "scope of immunity" when they released him to medical staff without police escort or follow-up on the part of the officers as to the Plaintiff's medical state and/or booking status upon release. Dkt. 34, p. 3. Plaintiff provides no legal authority and the court is unaware of any legal authority to support Plaintiff's conclusory assertion that the

---

[3] Plaintiff's claim that Officers Volkman and Stringfellow "kidnapped" him from his residence in violation of his due process rights under the Fifth Amendment must also be dismissed as invalid as the officers arrested him and took him into custody pursuant to valid court orders for his arrest. See *Hanson v. Snohomish*, 121 Wn.2d 552, 563, 852 P.2d 295 (1993) (civil rights action under the Fifth Amendment predicated on claim of constitutional right to be free from false imprisonment cannot stand once the underlying claims are dismissed or found invalid).

REPORT AND RECOMMENDATION - 9

officers had a duty to provide him with a police escort to the hospital or follow-up on his medical state when he was not in their custody.

Mr. Page also contends that Defendants have left unanswered the question of why he was not ultimately arrested on the warrants. Dkt. 34, p. 3. The competent and undisputed summary judgment before the court, however, reflects that Mr. Page was arrested on the warrants, even though he was not booked into the RJC jail. Dkt. 36, p. 1.

Viewing all the evidence in the light most favorable to Plaintiff, the court concludes that Officers Stringfellow and Volkman had probable cause to arrest Mr. Page based on the two arrest warrants. Thus, Officers Stringfellow and Volkman are entitled to qualified immunity in connection with Mr. Page's arrest.

Because Plaintiff cannot prove that his arrest was unlawful, his Fourth Amendment claim against the City of Fife must also be dismissed. To have succeeded against the City of Fife, a municipality, Mr. Page would have had to identify a policy, custom or practice that was the "moving force" behind an alleged constitutional deprivation. *Monell v. Dept. of Social Services*, 436 U.S. 658, 690 (1978). Mr. Page's unsupported allegations that his arrest was not completed or did not follow protocol are insufficient to establish a constitutional violation. In his response, Mr. Page states that he is "prepared to present at trial citizen testimony as to the reputation the City of Fife has for racial profiling and other unwritten policies and customs, commonly accepted and practiced by Fife police officers, which *likely* led to the violation of the Plaintiff's Fourth Amendment rights on the day in question." Dkt. 34, p. 4 (emphasis added). Mr. Page has not provided any competent summary judgment evidence to support such a claim. Pursuant to Fed.R.Civ.P. 56(e), affidavits supporting or opposing summary judgment must be made on personal knowledge, setting out facts that would be admissible in evidence and show that the

REPORT AND RECOMMENDATION - 10

affiant is competent to testify on the matters stated. In addition, Mr. Page fails to even identify the City of Fife's policy or policies that he claims violated his rights. Plaintiff's conclusory statements do not survive Defendants' motion for summary judgment. See, e.g., *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001) ("A plaintiff's belief that a defendant acted from an unlawful motive, without evidence supporting that belief, is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive." )

Accordingly, the undersigned recommends that Defendants' motion for summary judgment on Plaintiff's Fourth, Fifth and Fourteenth Amendment claims of unlawful arrest, kidnapping, violation of due process and violation of equal protection in connection with his arrest be granted.

**B.      Eighth Amendment Claim of Excessive Force**

At the outset, the Court notes that Mr. Page did not address his Eighth Amendment Claim of excessive force in his response to the motion for summary judgment. In fact, he stated that he conceded any claims that were not challenged in his response. Dkt. 34, p. 5. For this reason alone, Defendants' are entitled to summary judgment on this claim. In addition, they are entitled to summary judgment on the merits of this claim.

To determine whether the force used by law enforcement officials "to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) (quoting *United States v. Place*, 462 U.S. 696, 703, 103 S.Ct. 2637,

REPORT AND RECOMMENDATION - 11

77 L.Ed.2d 110 (1983))). This "balancing of competing interests" has been described as "the key principle of the Fourth Amendment." *Garner*, 471 U.S. at 8, 105 S.Ct. 1694 (quoting *Michigan v. Summers*, 452 U.S. 692, 700 n. 12, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981)). Because one of the factors in determining whether a particular use of force is excessive "is the extent of the intrusion, ... reasonableness depends on not only when a seizure is made, but also how it is carried out." *Id.*; see also *Graham*, 490 U.S. at 395, 109 S.Ct. 1865.

Mr. Page has provided no evidence that he suffered any physical harm as a result of any actions by Officers Volkman or Stringfellow. *See, e.g., Hannula v. City of Lakewood*, 907 F.2d 129, 131-32 (10th Cir.1990) (under due process standard, factors relevant to whether use of force is excessive include extent of injury inflicted, and where injury is minimal, force creating that injury also likely to be minimal); *Busch v. Torres*, 905 F.Supp. 766, 772 (C.D.Cal.1995) (to prevail on excessive use of force claim requires proof of significant physical injury) (quoting *Johnson v. Morel*, 876 F.2d 477, 480 (5th Cir.1989)). The undisputed evidence in this case reflects that the staff nurse from the RJC found no injuries on Mr. Page when she examined him immediately after his fall. Dkt. 32, p. 5. The evidence also reflects, and Mr. Page does not dispute, that Mr. Page was transported by the Kent Fire Department to Valley Medical Center for further examination. *Id.* However, when he arrived at the hospital, Mr. Page left the hospital before he received any examination or treatment. Dkt. 31, p. 6.

To demonstrate unconstitutional excessive force, a claimant must also show that officials applied force maliciously and sadistically to cause harm. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). The standard is whether "the defendants applied force 'maliciously and sadistically for the very purpose of causing harm." *Id.* at 1441 (emphasis in original). Not every malevolent touch by a prison guard gives rise to a federal cause of action; indeed, the Eighth Amendment's

REPORT AND RECOMMENDATION - 12

prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition de minimis uses of physical force. *Cf Hudson*, 503 U.S. at 9-10 (blows directed at inmate which caused bruises, swelling, loosened teeth and cracked dental plate were not de minimis). Law enforcement officers are granted legal authority to use physical force, if necessary, in the course of making lawful arrests. *Gramm v. Connor*, 490 U.S. 386, 393 (1989). This includes using handcuffs and the physical force necessary to secure those handcuffs. *Taylor v. Pressler*, 716 S.2d 701, 708 (9th Cir. 1983).

Viewing the evidence in the light most favorable to Mr. Page, the court concludes that there is no evidence that Officer Volkman applied force maliciously and sadistically to cause harm, even assuming that Officer Volkman "pulled too hard and too fast," on Mr. Page's arm, causing his fall. See Dkt. 34, p. 2 (Plaintiff's sworn statement of July 2008). Mr. Page has not alleged or presented evidence that Officer Volkman intended to cause him harm and has provided no evidence that Mr. Page did, in fact, suffer harm as a result of Officer Volkman's actions. Thus, his claim of excessive force under the Eighth Amendment against Officer Volkman should be dismissed.

Although Mr. Page names Officer Stringfellow in connection with his Eighth Amendment claim, Mr. Page asserts no factual allegations against Officer Stringfellow. The undisputed evidence before the court confirms that Officer Stringfellow was not present when Mr. Page was allegedly injured. Dkt. 33, p. 9 (Exh. 2). Therefore, any Eighth Amendment claim against Officer Stringfellow must also be dismissed. In addition, to prove an Eighth Amendment violation against the City of Fife, Mr. Page must present evidence that the City of Fife had a policy, custom or practice that was the "moving force" behind the alleged constitutional

REPORT AND RECOMMENDATION - 13

deprivation. *Monell*, 436 U.S. at 694-95. This he has failed to do and his Eighth Amendment claims against the City of Fife must also be dismissed.

**C.      Plaintiff's State Law Claims**

Defendants argue that, although Mr. Page does not articulate any claims under state law in his amended complaint, he previously alluded to a claim of excessive force and emotional distress in his original complaint. To the extent Mr. Page contends he has asserted any state law claims, Defendants argue that he is precluded from pursuing them because he failed to comply with the requirement of RCW 4.96.020(4) to file a claim sixty days before initiating his lawsuit.

Mr. Page initiated his lawsuit here by filing his complaint on June 12, 2008. Dkt. 1. He did not file his claim for damages until September 18, 2008, over 90 days after initiating his lawsuit. Dkt. 31, Exh. 2, p. 7.

Therefore, the undersigned finds that any state law claims must be dismissed.

## CONCLUSION

Mr. Page is unable to show any constitutional violations in this matter. His Amended Complaint alleges incidents that, even if true, do not rise to the level of constitutional significance. Mr. Page has provided no evidence to show that his arrest was not properly accomplished or that any of the Defendants applied force maliciously and sadistically to cause harm or that he actually suffered injury. Accordingly, the undersigned recommends that Defendant's motion for summary judgment (Dkt. 30) be **GRANTED** and that Mr. Page's claims against the Defendants in this case be **DISMISSED WITH PREJUDICE.**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those

REPORT AND RECOMMENDATION - 14

objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **December 18, 2009**, as noted in the caption.

DATED this  23rd day of November, 2009.

                                               Karen L. Strombom
                                             United States Magistrate Judge